# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

BOYCE SIMONS                                                                                  PLAINTIFF

V.                    CASE NO. 3:17-CV-00136-JTK

NANCY A. BERRYHILL,
**Deputy Commissioner for Operations,**
**performing the duties and functions not reserved**
**to the Commissioner of Social Security**                              DEFENDANT

## ORDER

**I. Introduction:**

Plaintiff, Boyce Simons, applied for disability benefits on September 25, 2014, alleging a disability onset date of June 10, 2012 (Tr. at 21). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 34). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Simons has requested judicial review.

For the reasons stated below, the Court[1] affirms the decision of the Commissioner.

**II. The Commissioner's Decision:**

The ALJ found that Simons had not engaged in substantial gainful activity since the alleged onset date of June 10, 2012. (Tr. at 23). The ALJ found, at Step Two of the sequential five-step analysis, that Simons has the following severe impairments: degenerative disc disease of the lumbar and cervical spine, bilateral carpal tunnel syndrome, hypertension, and obesity. *Id.*

At Step Three, the ALJ determined that Simons's impairments did not meet or equal a listed impairment. (Tr. at 25). Before proceeding to Step Four, the ALJ determined that Simons had the

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

residual functional capacity ("RFC") to perform work at the light level, except that: (1) he can only occasionally climb, stoop, crouch, kneel, and crawl; (2) he cannot perform overhead reaching with the left, non-dominant arm; (3) he can only frequently reach and handle; and (4) he is limited to standing and walking for two-hour intervals before he must take a break. (Tr. at 27).

The ALJ made no finding at Step Four regarding past relevant work.[2] (Tr. at 30-31). The ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Simons's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. at 32). Based on that determination, the ALJ held that Simons was not disabled. (Tr. at 32-34).

## III. <u>Discussion</u>:

### A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting

---

[2] As of August 24, 2012, the Regulations provide an expedient for adjudicators to proceed immediately to Step Five when there is insufficient vocational information to make a finding at Step Four. *See* 77 Fed. Reg. 43492, *Expedited Vocational Assessment under the Sequential Evaluation Process.* Such is the case here, because Simons did not perform past relevant work at the level of substantial gainful activity. (Tr. at 31).

2

*Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

B. Simons's Arguments on Appeal

Simons contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that the RFC for reaching exceeded his functional capacity, and that the ALJ erred in the weight he assigned to two doctors' opinions. For the following reasons, the Court finds that substantial evidence supports the ALJ's decision.

No medical records exist in the record for the two years following the alleged onset date, and the Court takes note of this. The failure to seek regular and continuing treatment contradicts allegations of disability. *See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997).

After complaining of burning and numbness in his arms, along with neck pain, Simons had a nerve conduction study done on May 28, 2014. (Tr. at 298-300, 318-319). The study showed bilateral median neuropathy across the wrists of a mild to moderate nature, without active denervation or reinnervation. *Id*. No polyneuropathy or myopathy was present. *Id*. Carpal tunnel syndrome was diagnosed on October 20, 2014, and Simons was referred to a neurologist. (Tr. at 312-313).

Janet Cathey, M.D., a non-examining state agency physician, reviewed the medical records and found, in November 2014, that Simons would be limited to occasional fingering and must avoid repetitive motion of the wrists. (Tr. at 116).

On November 25, December 1, and December 2, 2014, Simons underwent physical therapy for arm pain that extended into the shoulder and neck. (Tr. at 339-347). At the first visit, he had full range of motion in the right and left shoulder, no pain in the cervical spine, and was able to perform full flexion of the left shoulder. (Tr. at 341). He had negative ulnar nerve and labral nerve

3

testing tension on the left, and negative impingement on the left shoulder. *Id*. Normal examination findings are not indicative of disabling pain. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Simons did prove unable to abduct the left shoulder and had a decreased lateral curvature of the neck. (Tr. at 339-347). However, his therapist told him to resume activities of daily living and begin home strengthening exercises. (Tr. at 342). A provider's recommendation to exercise suggests that a claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

On November 18, 2014, Simons presented to Baptist OneCare with carpal tunnel pain. (Tr. at 380-381). He was negative for back and neck pain, and his gait was normal. *Id*. His posture was good and he had a negative straight-leg raise. *Id.* He had no motor or sensory deficits. *Id.* His doctor referred him to physical therapy. *Id*.

On December 4, 2014, Simons had an MRI of the cervical spine and left shoulder. (Tr. at 372-375). The cervical MRI showed spondylosis with neural foraminal narrowing secondary to joint hypertrophy. *Id.* The shoulder MRI showed a small tear of the supraspinatus, mild tendinosis, and mild to moderate bursitis. *Id*. Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).

At an appointment on January 27, 2015, Simons had normal range of motion in his back with no joint swelling, but positive impingement on the left shoulder. (Tr. at 386). An x-ray of the left shoulder was unremarkable. *Id*. Simons had a steroid injection in the left shoulder. *Id*.

On March 12, 2015, William Harrison, M.D., a non-examining state physician, reviewed the medical records and found Simons capable of light work with only occasional overhead reaching with the left arm. (Tr. at 129-133).

Because of a diagnosis of left shoulder rotator cuff tear, Simons had two left shoulder repair surgeries, in March and September 2015. Tr. at 397-400). After the first surgery, Simons said his pain was controlled by medication. (Tr. at 426). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). Simons had full passive forward flexion in May 2015, and he was urged to exercise in June 2015. (Tr. at 431-435). In July 2015, he said he had no post-op problems. (Tr. at 436). Improvement in strength and diminished pain supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

Simons said he hurt his left shoulder when he reached to catch his brother from falling. (Tr. at 446). This resulted in the second surgery. But again, post-surgery, Simons said he had no real problems and he had less pain. (Tr. at 451-484). He attended fifteen physical therapy sessions in October and November 2015, during which he progressed well and tolerated the therapy with ease. (Tr. at 472-484). In November 2015, he said he was continuing to improve. (Tr. at 488).

Simons argues that the RFC for frequent reaching and handling exceeds his abilities. A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

Objective testing revealed mild to moderate conditions in Simons's wrists and shoulders. He responded well to surgery and physical therapy. Pain medication seemed to manage his

5

symptoms. As well, Simons indicated he could perform a variety of daily activities, including feeding pets, doing chores, cooking, driving, shopping, and mowing the lawn. (Tr. at 98-99, 227-230). Such daily activities undermine his claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). The record also does not reflect frequent treatment for his conditions, or consistent care with a specialist for pain management. He testified at the hearing that he could use his shoulder regularly and reach over his head. (Tr. at 94). He said he had no symptoms in his hands or wrists. (Tr. at 95).

Still, the ALJ accounted for Simons's symptoms, imposing postural limitations beyond the RFC for light work. He added no overhead reaching with the left arm and only frequent fingering and handling. He based his determination on a full review of the medical records, including the opinions of two state-agency doctors. It is the ALJ's function to resolve conflicts among the various physicians. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). He must give reasons for the weight he assigns each opinion.

The ALJ gave little weight to the opinion of Dr. Cathey because her review occurred before Simons's conditions worsened. (Tr. at 116-117). Still, her statement that he would be restricted from constant reaching and handling falls in line with the limitation to frequent handling. Simons argues that Dr. Cathey's conclusion that he could only occasionally finger subverts the assigned RFC. But again, the ALJ pointed out that Dr. Cathey did not have the benefit of all of the medical records, so the ALJ was not bound by her conclusions. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010)(ALJ not required to include limitations from opinions he properly disregarded).

The ALJ gave greater weight to the opinion of Dr. Harrison, because he had more evidence to review. (Tr. at 130). While Dr. Harrison restricted Simons to only occasional overhead reaching,

6

the ALJ went further and ruled out all overhead reaching with the left arm. So the ALJ fairly considered the medical opinions against the objective evidence and imposed greater restrictions, appropriately crediting Simons's symptoms.

Simons argues that the ALJ should have recontacted a treating physician to get a better picture of his limitations. An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a Plaintiff has the burden of proving his disability; the ALJ does not have to play counsel for the Plaintiff. *Id*. Simons did not present any medical source statements from his treating doctors. It was not incumbent upon the ALJ to find such opinions and present Simons's case for him. The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011). In this case, the medical record was consistent with the consulting physicians' opinions and Simons's own testimony. The ALJ had a fully developed record before him.

## IV. <u>Conclusion</u>:

There is substantial evidence to support the Commissioner's decision to deny benefits. The RFC fully incorporated Simons's symptoms and limitations, and the ALJ gave proper weight to the reviewing physicians' opinions. The finding that Simons was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is affirmed. The case is dismissed, with prejudice.

IT IS SO ORDERED this 8th day of May, 2018.

_____
UNITED STATES MAGISTRATE JUDGE